You will announce our third and final case of this morning, number 18-1022, Cordaro v. United States, Mr. Kelly and Mr. Cerruti again. You might like being here. Nothing I'd rather do. All right.  Whenever you're ready. By the way, had I known that, I apologize. I should have had these two together so you could have gotten out earlier. Good morning, Your Honor. May it please the court. Brian Kelly and Charles Delano on behalf of the appellant, Mr. Cordaro. I respectfully request three minutes for rebuttal. Sure. Okay, we're here today on a somewhat unusual procedural posture in that all parties agree that there was, in fact, McDonald-era fallot in the jury instructions in the trial of Mr. Cordaro. And then the question becomes would he have been convicted even without a proper instruction, or even with a proper instruction, excuse me. Right to my next point. And what follows from this McDonald-era is important. And we think what follows is that the now defective counts of conviction should be vacated. And that entitles him to a resentencing under this court's sentencing package doctrine if those, if any, counts are vacated. And at the outset, I would say this. In the sentencing package doctrine that I referred to as power of law. What you have to get to right away is if a proper instruction had been given, would he not have been convicted? He would not have been convicted with respect to counts 20 and 21 I'd like to focus on, Your Honor. Go ahead. Because I think at the outset what's most important is to remember this. There are three different government entities here, three different government organizations. And that's been conflated throughout the trial and the process to date. And the reason that matters is because the fact that there are three different government agencies is critical to this court's McDonald-slash-Farqa two-step analysis. Before you get into that, just if I could, just so we can understand procedurally what we're doing here. The gateway, right, is showing that he's clearly innocent. That gets you in the door, right, to consider whether your client's entitled to relief under 2241. Is that right? Yes. That's even called jurisdictional, right? Well, the court below said we are entitled to 2241. No, the court below said it was a merits thing. Some of our cases have said it's jurisdictional. It's sort of the gateway to considering it in the first place. Well, be that as it may, he is, in fact, actually innocent of at least two of the counts that we've referenced below. So jurisdictionally, it's properly before this court. So when you say actually innocent, you're arguing then that you're prepared to demonstrate in light of all of the evidence that's been prepared, it's more likely than not that no reasonable juror would have convicted him. Yes. That's the standard that you believe that you can meet. Yes, Your Honor, and that's why I'd like to focus at the outset on counts 20 and 21 because I think that standard is clearly met here. And the reason I started out with noting that there are three separate government agencies is because that's important to the announcement of those two Hobbs Act extortion counts, counts 20 and 21 of the 1951 Hobbs Act extortion counts of conviction. And the three agencies that I'm referring to, first and foremost, is the Lackawanna County Commission. Obviously, Cadero is beneficial on that. There's no dispute. But the other two agencies that are separate legal agencies that he had no legal authority over, that he didn't sign contracts, he didn't magically wave his wand and invalidate contracts, are the two agencies that are the focus of counts 20 and 21. And those would be, the acronyms are very difficult, but it's LRBSA, the Lackawanna River Basin Sewer Authority applies to counts 20, and the COLTS, the County of Lackawanna Transportation System, again, a separate agency that affects counts 21. What's the relationship between them? Is the authority, is his position in a position of authority over those separate? No, no, and that's the key here. He does not control those two separate authorities. Is that a requirement on the statute? He doesn't have to have apparent authority. If it is either represented or seemingly possible to those who are being influenced, isn't that sufficient? I mean, he doesn't have to have the ability to actually do what it is that they're hoping. He has to, under this court's precedence in FATA that's followed by McDonald, you're right on the first part that he doesn't actually have to be the official of those two agencies. But if he's not an official of those two agencies, there has to be some proof that he impermissibly pressured those two agencies. That's the second step of the McDonald analysis that this court in FATA clearly defined. If you're not a member of the board, there has to be some evidence in the record that you pressured that other board. So yes, he's an official of Lackawanna County Commissioners, but he's not an official of these other two boards. And if there was any evidence in the record that he had pressured those two other boards, I'd have a problem in making this argument. But I don't. What are you relying on in FATA? Okay, what am I relying upon in FATA? Yeah, I mean, I'm familiar with the case. I'm trying to think of the factual scenario that you're relying on. Is it the ambassador? The ambassadorship issue. Okay. Oh, it was the slip opinion pages 68 through 70. That's what I'd like to focus the panel on, because that's akin to our situation, because the jury in FATA was not given the ability to distinguish, was it merely acceptable recommendations that a public official is allowed to do to another board, or was it impermissible attempts to pressure or advise that other official? That's the prong that I'm most concerned with here with these extortion convictions. And like in FATA, this jury did not have the ability to make that finding, because with respect to count 20, let's start there, okay, because that's the easiest one. That's the plainest one where we believe is defective and should be vacated to the court below and entitles him to re-sentence. And in count 20, that involved the engineering companies called Acker Associates. And the bulk of the government's evidence with respect to Acker affected the LRBSA contract, the Lackawanna River Basin Sewer Authority contract. Now, Cadero did not have any legal authority over the LRBSA. In fact, in fact, the contract that was the focus of the charge, the contract had already been awarded before Cadero took office. So with respect to the step one McDonald analysis, is there any pending matter? I thought the issue was the continuation of the contract and not the initial inception of the contract. Well, that was the testimony of the person who allegedly bribed, so they were concerned about the continuation of the contract. But as we've argued below, the contract was in effect, it wasn't pending. There has to be a pending matter. And here it's our view that the contract awarded before he became an official wasn't pending. So that's the first step. But the second more difficult step for the government to satisfy, because they haven't, is that nobody, nobody from the LRBSA testified in this case. So there's no evidence about unseemly pressure on this second board. And there's no evidence in the record that Cadero did anything to pressure anyone at the LRBSA. And that was indeed the focus at Count 20, the LRBSA. It was a passing reverence to other matters, but the focus was the LRBSA, and Cadero did not pressure anyone there. And what this means is he is, in fact, actually innocent of that charge, and a properly instructed jury would find him so, and that would trigger the resentencing. But moreover, what it means, it means that given the procedural posture we're in, that this court, in its de novo review, can also consider the newly available evidence that affects Count 20. For instance, you can consider the fact that the two governments, the government's two star witnesses, have either been indicted or convicted. So the two star witnesses on Count 20 were Al Hughes and P.J. McClain. Now, Hughes has been federally indicted for fraudulent activity that occurred at the time of the trial. He's been indicted by the same U.S. Attorney's Office that convicted Mr. Cadero. It's an interesting argument. You could say that that's corroborative of the testimony. Well, it was a different fraud. It wasn't the fraud here. He didn't get up on the witness stand. Well, I mean, I don't think that undercuts the argument, right? No, it actually, it shows he's a fraudster. He's guilty of crimes of dishonesty. Now, he's presumed innocent, but I'm sure if the government thinks he's guilty, that's why they indicted him. And I'm not going to quibble. I think Hughes is guilty, too. The point is Hughes was not indicted for anything related to Cadero. He was indicted for his own frauds that he was committing at the time of this trial. So it's just one piece of newly available evidence that the court should consider in assessing whether Cadero could ever be convicted again of Count 20. And likewise, McClain, the other star witness, he's not just indicted, he's convicted. Go ahead. Well, okay, let's take those two facts for a moment. All right. Each of them, as you just pointed out, has faced separate justice. Now, I don't understand why that undercuts their credibility. Oftentimes, the credibility of a witness is enhanced by the fact that this is not an anomaly, that they have, in fact, engaged in criminal activity. They were participants. It's not as though they're pointing the finger at Cadero and saying, I wasn't involved, I'm innocent. We were all together. Right, and the fact that you can bring in to the fact, you know, ladies and gentlemen, they were also involved over here. That doesn't necessarily undercut their credibility. Well, I respectfully disagree. Yes, tell me. Here's why. If he's admitting his involvement in the underlying crime, yeah, I agree, it would enhance his credibility. But if there's a separate crime going on that the jury doesn't hear about, he's committing while on the witness stand, and he's obligated, and the government is obligated to present him in a way where he admits his crimes, whatever they may be. So you're saying there's a Giglio violation? Yes, and we've said that below. And, well, look, is there a Giglio violation that would require the government to knowingly have not disclosed this to us? The record's unclear as to what the government did or did not know at the time. But the point is that given the procedural posture of this case now with respect to Count 20, this would be the type of newly available evidence that could be considered. It's extra criminal activity values. It doesn't enhance his credibility. Frankly, it destroys it if he's on the witness stand not disclosing the fact that when he leaves the stand that day, he's out committing more crimes. The government's witnesses aren't supposed to be on the stand during the day and committing crimes at night, which is what he's doing. But I'm so sorry. That's what I don't understand. He's on the stand admitting that he's engaged in criminal activity, right? Yeah. And you say subsequent to that, just listen to the question. You say subsequent to that, the government then becomes aware that he engages in criminal activity and subsequent to that day then indicts him. How does that undercut his credibility? His criminal activity was occurring while he was on the witness stand on an unrelated matter. So the point is that it's additional impeachment information that a new jury would have to disclose. That would have been known at that point in time. Well, it's not clear what was known at the time. We didn't get discovery on it. It's not the focus of our legal argument. All I'm suggesting is that it's one piece of evidence that can be put into the analysis on Count 20, that is the government's star witness was in fact committing crimes on his own that was never disclosed to the jury or the defendant or anyone else. But you're not arguing that the government knew that. That's not my argument here. The fact is a new jury would have access to that information. As they would McLean, the other star witness, they would have access to his conviction. As they would have access, the only thing in the record about the LRBSA is from Cordero. At joint appendix 402 we put in an affidavit from the chief legal counsel for the LRBSA that says there's no pressure from Cordero. We also put in an accounting named Kohansky at 166 of the joint appendix. Cordero had plenty of cash. He didn't need the cash that supposedly was given to him by Hughes. So that's a series of the evidence is what you're arguing. Pardon me, Your Honor? It sounds like there's evidence on the other side, and there was a conviction. So you're trying to say that there is what, impeachment evidence that should have come in or came in after that we should take into account, or what? At this stage, you can take it into account. It's newly available evidence. It's not the main thrust of the argument on count 20. It's just you're entitled to review it, and we think it supports the fact that on count 20, where there's no pressure on anyone from the LRBSA, as required under FATA and McDonald, that count fails. And if that count fails, he gets a new sentence. That can't possibly be right, right? That would mean if I testify against you at trial, and then you go on to be convicted, and I go commit another crime, you later on will say you should have been able to cross-examine me about that crime that I subsequently committed. That can't be right. That's not what I'm saying, Your Honor, respectfully. The impeachment evidence on Hughes and McClain is just one factor to put into the analysis on count 20. It doesn't control. So it's actual innocence? Yes, because at this point, there's nothing in the record that Cordero did anything with respect to the separate agency that he didn't have control over. The contract had already been awarded. There's nothing pending under FATA. There has to be some showing that this official over here impermissibly influenced the other official over here. He didn't. There's no evidence in the record. And that should be the end of the story. Isn't it? I thought the testimony was that the representations to Acker and Highland. Right, sorry. Thank you. The representations to Acker and Highland was that he, Cordero, would speak on their behalf. Now, if those are the representations, why isn't that sufficient? Well, that's not what the evidence is on Acker count 20. Highland is count 21. You're arguing both, though, right? I am, yes. Okay. Yes. And I'm just... May I proceed? Sorry. So with respect to Highland, I can't dispute that there's a pending matter, right? There's a contract. That involved the so-called Colts Board, the County of Lackawanna Transportation System, right? And that involved discussions regarding a contract that was eventually approved. So now, a contract that's... Okay. So we're going to put... You had begun your argument with 20 and 21, so we're going to put 21 aside then. But if I could speak to 21, because there's, again, no evidence that is sufficient to show any impermissible pressure by Cordero on this other board. Colts. The only guy who testified was this guy named Finan. He's the only guy from Colts that the government presented. And what does he say? He does not talk about any impermissible pressure as required under FATA that would make this count legally stand up. Now, what does Mr. Finan say? He says it was more convenient to use just one architectural firm. He says that at 808 of the appendix. He said he agreed with using just one architectural firm instead of two. That's at 806. He wrote a letter to the other firm when he cut them out saying, you know, it was common sense and a money issue. All of these things... Didn't he testify that there was a discussion with... You'll tell me if I'm misrecognizing. I thought this was the one where there was a discussion about the right amount of money. No, this is the one where Cordero instructed him he wanted to use just one architectural firm. No doubt about that. That's in the record. But it's permissible to make a recommendation on something like that. The question is, was there any impermissible pressure on anyone at Colts? And the record is devoid of any such pressure. The only evidence with respect to anyone from Colts is this Mr. Finan. So that's why I'm trying to focus on Finan's testimony here. With respect to those extortion counts, the Hobbs Act counts, we think they must be vacated. And under this court's sentencing package document in Caravello, we think that triggers a resentencing below. Thank you. I've gone far over. No, no problem at all. Mr. Cerruti. May it please the court. Stephen Cerruti once again on behalf of the United States. Mr. Kelly stood up here and the focus of his argument seemed to be Cordero didn't have authority over Colts or LRBSA. There's no evidence of pressure that was actually put on the officials from those different agencies. We disagree with the fact that there's no evidence of pressure. But before we get to that, McDonnell itself says that the official who is on trial or is being accused doesn't have to have authority over the matter that is pending. So that argument gets. By using its official position to exert pressure on another official to perform an official act. Right. McDonnell says you don't have to actually have authority. And McDonnell also reaffirmed the idea that you don't actually have to assert that. So is what you're saying that he is what you're saying that he. Well, he didn't have the authority. He did exert pressure. Well, we believe certainly with regards to the Colts board and finding that there was pressure exerted. There was evidence of that pressure being exerted, actually exerting it beyond just an agreement to do so. And Acker there there admittedly isn't a whole lot of evidence that I can point to that says that there was actual pressure exerted. But he certainly agreed to do it by sending Al Hughes to to demand fifteen thousand. And ultimately that was downgraded to ten thousand dollars a month for continued dealings with the county. So pressure prerequisite on that. In the context in which we're talking about actual pressure is not. And again, McDonnell says that there just has to be an agreement that the payor has to believe that the payee has agreed to assert it. But there doesn't actually have to be a certain asserting of that pressure. Now, we would disagree with with Cordero and Cordero's counsel that no pressure was put on James Finan. The complete picture on the Finan and Colts matter is that Finan was wearing two hats. He was he was the executive director of Colts. Yes, a separate municipal entity. He was also the Lackawanna County director of transportation at the same time operating under Cordero's authority. He when asked whether at this meeting he had with Cordero, if Cordero told him to replace the current architectural firm with Highland, said yes. He asked me to do that. And then if you read Finan's testimony, he talks about who was heavily involved in the negotiation of the contract with Highland. Robert Cordero. So if he has no authority and no implicit authority, what is he doing negotiating the contract? A contract that was negotiated very favorably for Highland and was done illegally without competing bids, ultimately resulting in a $900,000 assessment against Colts for not having gone out for bids. This was all part of James Finan's testimony. So to say that there wasn't pressure or no evidence of pressure or no evidence of solicitation of bribes and extortion under color of official right is simply wrong. But even beyond that, the focus here throughout the proceedings has primarily been on the LRBSA and Colts contracts. But factual innocence means you have to be innocent of it all. So even if you accept the idea that the LRBSA claims and the Colts claims aren't in there, the indictment charged other contracts as well. And evidence was produced of this same pattern of corruption with regard to these other contracts. And not just other contracts with other entities, other contracts with Acker, other contracts with Highland. And unless Cordero can come in here and show that he is actually innocent, factually innocent of every single one of those accusations, he loses. All right, so let's accept the factual innocence for a moment. Because the next question, I don't want your answer to be factual innocence. Your adversary talked about what I equipped as the Giglio issue, which I'm still not clear on. But let's assume for the moment that it's something like this. A cooperator is on the stand, admits to his own involvement, speaks to the defendant's involvement. And then subsequent to the time on the stand, engages in criminal activity and is later indicted for that criminal activity. I'm trying to figure out what the procedural posture would be to allow that. But let's assume that's not the immediate impediment. Is that an argument that can technically prevail in this 2241 posture? The government certainly doesn't believe so. And let me start off by saying we categorically reject any idea that there was a Giglio violation here. And we've taken that position whenever this has been thrown up there just to make that clear. But you're talking, even if you say that it goes to credibility, and I know you were having a discussion with opposing counsel about that during your questioning, credibility, sufficiency of the evidence, these are not things that are properly considered under 2241. Because those are separate from actual innocence. And it is the actual innocence that's supposed to be the focus of this court and the court below in a 2241 proceeding. So keeping them separate, it means that they are improperly there. Now, if you had a situation where someone recants their testimony, that may be new evidence that you can try and raise through a 2255, but that doesn't necessarily, even at that point, go to actual innocence. Moreover, the whole basis of this petition was the change of law under McDonnell. And so the new evidence that is entitled to be looked at by the courts at this point is the new law as interpreted by McDonnell. It's not all of these other ancillary, if you like that word from earlier, ancillary issues that are trying to be thrown up against the wall in the hope that something sticks here. We have to stay focused on exactly what the inquiry is. And the inquiry is actual, factual innocence. I am going to come back to that simply because that is the framework that this court has said has to be used in a 2241. And whether it's credibility or sufficiency, that doesn't go to actual innocence. Does McDonnell apply retroactively? In a situation like this? This case, I bet. Absolutely. Okay. I think that it does because you have an instance where if he were convicted under 201 that McDonnell applies to, and again it's the United States position as we brief that McDonnell doesn't apply to 666, you have a change in the law that could render past conduct non-criminal. Okay. You could argue the other side too. It doesn't say clarify the definitions, in which case it might not, but that's all right, whatever. Maybe I'll get a call from DC telling me I shouldn't have said that. No, that's all right. I have no further questions. Thank you very much. Thank you. Yes, Your Honor. Thank you. Briefly. All right. Not to go back on the impeachment part too much, Your Honor, but just for the record, the criminal activity that their witness was committing wasn't subsequent to this case. It was while he was on the witness stand and he was doing other crimes, and that's not the type of thing that enhances anybody's credibility, and we would submit that that's the type of thing under Bruce. There's a Third Circuit case citing a lot of these Supreme Court cases. Bruce, 868 F3rd 170. It's clearly newly available evidence that this court in its de novo review capacity can consider, but more importantly, let's get back to what one thing he just said about even if you find there's been no impermissible pressure, because that is the standard under FATA. That is the standard on this court's recent opinion. So I disagree with his representations about FATA. FATA says, you know, Step 2 of MacDonald requires us to determine whether FATA's efforts qualify as permissible attempts to express support, which is legit, or impermissible attempts to pressure or advise another official, and that's what we're saying on Counts 20 and 21. Specifically, they don't have it, and because they don't have it, he's actually innocent. He's a man who's protested his innocence since day one. So your adversary mentioned that Mr. Cordero put pressure on Finan. That's part of the evidence that they said they've mustered on that. No. I think if you review Finan's testimony in the joint appendix, which I think starts around 790, the only one who pressured Finan at all that he testified about was the FBI agent Rivado who was handling it. With respect to Cordero, he said he agreed with using one architectural firm. That's at page 806. With respect to only using one architectural firm, he said it was more economical. It's a money issue. It's not pressure from Cordero. That's the best they have on Count 21 in terms of the Colts' board. They've got nothing on the LRBSA, nothing. Final point. I know I'm running out of time, but he has a last-ditch argument which changes the theory a bit where he says, well, even if there's no pressure on the Colts' people or there's no pressure on the LRBSA people, there's other contracts in evidence. This changing of the theory doesn't save the government on these two counts because of the Tyler case. Now, the Tyler case has been cited by both sides, but we respectfully submit that it helps us here in that under the Tyler case, if one of the government's theories is legally invalid, the conviction should be vacated and remanded for a new trial. And a legal theory is invalid if the jury instructions are based on an erroneous interpretation of the law. So he can't come in now and say, well, disregard Colts, disregard LRBSA. Is that a direct appeal, though? Isn't there a procedural difference there? No, Your Honor. This would be in the context of these habeas petitions. In fact, there's an unpublished panel opinion that Judge Greenaway was on called Morsley, M-O-R-S-L-E-Y. That's 615 Federal Appendix 719. And that's where I'm getting this language on that's following the Tyler progeny. I know there's been a lot of back and forth about how Tyler applies, but here it's still good law. There's been no back and forth about what to do with NPOs, though. Say it again. I'm sorry? I said there's been no back and forth on what to do with NPOs. Well, the fact is Tyler's still good law. The government never appealed it. Tyler's still an NPO. Oh, he meant underneath it. Yeah, it's still good law. The government never appealed Tyler, and it's been expanded upon. And it helps Mr. Cordero in this instance if the court finds, and I'm not saying it has to, but if the court finds that there's no evidence of pressure on Colts, there's no evidence of pressure on the LBRSA, and therefore Council 20 and 21 should go, it shouldn't then be saved for the government because of this separate legal period. But doesn't what Tyler reaffirm something that Judge Greenaway had said, the axiom that you still have to show that no reasonable juror would have voted to convict? Yes, and in this case, no reasonable jury would, given the fact that there's no evidence of pressure as required by the law on those two counts in particular, 20 and 21. And those, of course, infect the rest of the case, may have relevance to sentencing issues, but those are the two counts we'd respectfully ask the panel to focus most on. Because the government hasn't proven there's nothing in the record of undue pressure as required, and we respectfully ask you to reverse the convictions at a minimum on those counts, and we'd appreciate your time on this, and apologies again for going overboard here. Thank you. Thank you both. Very well-presented arguments, and we'll take the matter under advisement. Thank you for being here today.